# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| David Ray Tant, ) | Civil Action No.: 3:12-cv-03020-JFA-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| William Frick, Michael Stobbe, David ) | |
| Tatarsky, and John Doe, individually, or ) | |
| alternatively in their capacities as agents ) | |
| of the South Carolina Department of ) | **RESPONSE IN OPPOSITION TO** |
| Corrections, the South Carolina Office of ) | **PLAINTIFF'S MOTION FOR** |
| the Attorney General, the South Carolina ) | **PROTECTIVE ORDER ON BEHALF** |
| Department of Pardon, Probation and ) | **OF DEFENDANTS WILLIAM FRICK,** |
| Parole, and the Fairfield County ) | **SOUTH CAROLINA OFFICE OF THE** |
| Solicitor's Office, and therefore, the South ) | **ATTORNEY GENERAL AND FAIRFIELD** |
| Carolina Department of Corrections, the ) | **COUNTY SOLICITOR'S OFFICE** |
| South Carolina Office of the Attorney ) | |
| General, the South Carolina Department ) | |
| of Pardon, Probation and Parole, and the ) | |
| Fairfield County Solicitor's Office, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

  Counsel for Defendants William Frick, the South Carolina Office of the Attorney General, and the Fairfield County Solicitor's Office hereby respond in opposition to the Plaintiff's recently filed Motion for Protective Order (ECF Docket Entry # 33) as follows:

  The Plaintiff has sought an order from this Court sealing the transcript of the deposition of the Plaintiff, David Ray Tant, which was conducted on June 4, 2013. Counsel for the Plaintiff contends in the Plaintiff's recent motion that counsel for this Defendant "asked questions for the sole purpose of intimidating and harassing [the Plaintiff] by suggesting he was going to take steps to get [the Plaintiff's] parole revoked." *See* ECF Docket Entry # 33, ¶ 4. Specifically, the counsel for the

1

Plaintiff has alleged that counsel for these Defendants threatened use of the Plaintiff's deposition testimony for collateral proceedings, and contends that such behavior is "unprofessional at best, […] certainly outrageous," and "possibly unlawful." *Id.* at ¶ 6; ECF Docket Entry # 33-1. As a result, Plaintiff's counsel seeks an order, pursuant to Rule 26(c), Fed.R.Civ.P., "sealing the [Plaintiff's] deposition and prohibiting all parties and counsel from releasing any information in the deposition, or any copies thereof, to anyone not directly involved in this litigation." ECF Docket Entry # 33.

In his Complaint, the Plaintiff asserts that Defendant Frick and other employees of the South Carolina Attorney General's Office conspired with employees of the Defendants South Carolina Department of Corrections and South Carolina Department of Pardon, Probation and Parole to "illegally and improperly" increase the Plaintiff's sentence from fifteen to forty years. The Plaintiff was arrested in April 2004 after a spring gun that he had set on his property injured a land surveyor. The ensuing investigation revealed that the Plaintiff had an array of dogfighting equipment on his property in rural Charleston County, including caged treadmills and electric cattle prods. In addition, dozens of dogs were seized from the Plaintiff's property. The Plaintiff was prosecuted by the South Carolina Attorney General's Office, and in November 2004, the Plaintiff was called to trial before the Honorable Wyatt T. Saunders to face charges of assault and battery with intent to kill, possession of a dangerous animal, and forty-one counts of owning an animal for the purpose of fighting or baiting.[1]

In the midst of his criminal trial, the Plaintiff expressed his desire to plead guilty to all of the charges facing him. On November 24, 2004, a hearing on the Plaintiff's guilty plea was held, and the Plaintiff indicated that he wished to plead guilty, and that his plea was based upon his own free will,

---

[1] The Plaintiff was charged pursuant to S.C. Code Ann. § 16-27-30, which provides:
> Any person who: (a) owns an animal for the purpose of fighting or baiting; (b) is a party to or causes any fighting or baiting of any animal; (c) purchases, rents, leases, or otherwise acquires or obtains the use of any structure, facility, or location for the purpose of fighting or baiting any animal; or (d) knowingly allows or permits or makes available any structure, facility, or location to be used for the purpose of fighting or baiting any animal is guilty of a felony and upon conviction must be punished by a fine of five thousand dollars or imprisoned for five years, or both.

without coercion from anyone and without influence from any drugs or alcohol.[2] After engaging in a lengthy dialogue with the Plaintiff to insure that that his guilty plea was free and voluntary, Judge Saunders accepted the Plaintiff's plea and sentenced him to a ten-year sentence for assault and battery of a high and aggravated nature and six five-year sentences for animal fighting and baiting.[3] Judge Saunders clearly indicated that the Plaintiff's five-year sentences for animal fighting were to be consecutive to one another, and consecutive to his sentence for assault and battery of a high and aggravated nature, for a total sentence of forty years. However, the Plaintiff now claims that Judge Saunders intended for his sentences on the charges of animal fighting to be served concurrently, thereby amounting to a total sentence of fifteen years.

As previously noted, the Plaintiff now contends in this civil lawsuit that the Defendants in this matter conspired with one another to illegally increase his sentence. The Plaintiff's deposition was taken on June 4, 2013, and the Defendants sought to question the Plaintiff regarding his criminal convictions.[4] Specifically, the Plaintiff was questioned about the crimes to which the Plaintiff pled guilty in his criminal trial, and the Plaintiff was provided with a copy of the transcript from the plea hearing so that he could refresh his recollection regarding his guilty plea. However, the Plaintiff offered testimony that was in direct contravention to his earlier statements made in open court as he pled guilty to animal fighting charges that had been levied against him. It is the Defendants' position that the Plaintiff's testimony was designed to downplay his actions and conduct that resulted in his criminal convictions in

---

[2] Counsel is in possession of the relevant portions of the transcript from the Plaintiff's criminal trial and will make a copy available to the Court for review should the Court so desire.

[3] Judge Saunders further ordered that two of the Plaintiff's five-year sentences could be rendered null and void upon payment of restitution to the land surveyor who had been injured by the Plaintiff's spring gun, as well as for the care of the animals that had been confiscated from the Plaintiff. The Plaintiff received suspended sentences for the other thirty-six charges to which he pled guilty.

[4] The Plaintiff's deposition testimony has been transcribed and a copy will be made available for *in camera* review at the Court's request. However, the Defendants are not attaching a copy of the transcript as an exhibit to this response due to the fact that the Plaintiff's pending motion seeks to seal the deposition transcript.

order to lend credence to his contention that Judge Saunders actually intended him to receive only a fifteen year sentence, rather than the forty year sentence that Judge Saunders unequivocally intended.

In light of the inconsistencies that clearly existed between the Plaintiff's deposition testimony and his testimony at the time of his guilty plea, counsel for these Defendants reminded the Plaintiff that he was under oath, and that consequences may exist for false testimony. Contrary to the contention of Plaintiff's counsel, at no point did counsel for any of the Defendants harass the Plaintiff or threaten him with criminal prosecution or revocation of his parole. Although a review of Fourth Circuit jurisprudence reveals no case law directly addressing this issue, it has been widely held by other circuits in the criminal arena that it is not improper for a trial court judge or prosecuting attorney to advise prospective witnesses of the penalties for testifying falsely. *See, e.g., United States. v. Anwar*, 428 F.3d 1102 (8th Cir. 2005); *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998); *United States v. Hooks*, 848 F.2d 785 (7th Cir. 1988); *United States v. Viera*, 819 F.2d 498 (5th Cir. 1987); *United States v. Simmons,* 670 F.2d 365 (D.C.Cir. 1982) (per curiam). In light of the clear dichotomy between the versions of events being offered by the Plaintiff, counsel for these Defendants indicated at the end of his questioning of the Plaintiff that he would carefully review the Plaintiff's testimony to determine what, if any, action he would take. However, counsel's comments were not intended to in anyway threaten or harass the Plaintiff, but rather indicated that counsel would have to determine what legal or ethical obligations may face him in light of the Plaintiff's contradictory statements.[5]

---

[5] After researching this issue, it seems that the obligations of Defendants' counsel is a somewhat open question. However, counsel has uncovered case law that indicates, at least under the former ABA Code of Professional Conduct, that an attorney had no duty to report to the Court his belief that a witness for the opposing party was committing perjury at deposition, even though attorney's client had informed him that the witness had stated that he was lying at deposition and even though the attorney believed, based upon his own knowledge of the facts, that the witness was lying, as he did not have information clearly establishing a fraud on the court. *In re Grievance Committee of U.S. Dist. Court, Dist. of Connecticut*, 847 F.2d 57 (D. Conn 1988). However, the question remains unclear, especially in light of the fact that counsel is currently representing the former criminal prosecutor of the Plaintiff, as well as the chief prosecutorial body of the State of South Carolina.

In this case, the Plaintiff has failed to demonstrate that he is entitled to a protective order to seal his deposition testimony. Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. Under that rule, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... requiring that a deposition be sealed and opened only on court order." Fed.R.Civ.P. 26(c)(1)(F). "The burden is on the party seeking protection to show 'good cause' by making a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *White v. McHugh*, 2010 WL 4340399 *2 (D.S.C. 2010), *adopted by* 2010 WL 4318834 (D.S.C. 2010) (citing *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C. 1991)).

In establishing "good cause," the moving party "may not rely upon 'stereotyped and conclusory statements.'" *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D.Md. 2006) (quoting 8A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2035 (2d ed.1994)). Instead, the movant "must present a 'particular and specific demonstration of fact' as to why a protective order should issue." *Id.* (quoting Wright et al., *supra*, § 2035). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" *Id.* (quoting *Merit Indus., Inc. v. Feuer*, 201 F.R.D. 382, 384–85 (E.D.Pa. 2001)). Thus, "the standard for issuance of a protective order is high." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D.Md. 2009); *see also Natanzon*, 240 F.R.D. at 202 (noting that Rule 26(c)'s good cause requirement "creates a rather high hurdle" for the moving party). Protective orders "should be sparingly used and cautiously granted." *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987).

Counsel for the Plaintiff has produced no evidence to show that the Plaintiff has been harassed or intimidated in this case. Moreover, Plaintiff's counsel failed to object to any question during the Plaintiff's deposition on the grounds that such questions were harassing or intimidating her client. The only relevant objection by Plaintiff's counsel came at the end of the questioning by

5

the counsel for these Defendants, wherein Plaintiff's counsel indicated that she felt the Plaintiff was being "abused" by the questioning. Prior to that point, Plaintiff's counsel made no effort to limit the questioning on the grounds that the questions were harassing or intimidating to the Plaintiff.

As an additional matter, the Plaintiff has failed to demonstrate how a protective order in this case would alleviate any fear of criminal prosecution of the Plaintiff—regardless of whether or not that fear is reasonable. It is well-settled in the Fourth Circuit that protective orders are of no issue when it comes to a federal grand jury's power to investigate criminal offenses. *See In re Grand Jury Subpoena*, 836 F.2d 1468 (4th Cir. 1988). The Fourth Circuit Court of Appeals has held that protective orders in civil cases do not prevent a grand jury from obtaining transcripts of civil depositions. *Id.* at 1475. Protective orders may not be obtained in civil cases in order to afford a witness immunity in potential criminal proceedings in the future. *Id.* Therefore, to the extent that counsel for the Plaintiff seeks a protective order in order to protect her client from possible criminal prosecution, the law of this Circuit is clear that such an order is unnecessary, as it cannot be used to shield the Plaintiff's testimony from a subpoena that may be issued by a grand jury.

Although representing the South Carolina Attorney General's Office in this matter, counsel for these Defendants certainly has no authority to order any prosecution of the Plaintiff. Likewise, counsel for these Defendants lacks any authority to prevent the Attorney General's Office from prosecuting the Plaintiff for any crime should it deem necessary. The South Carolina Constitution establishes the Attorney General as the chief prosecuting officer of the State. S.C. Const. Art. V, § 24. The attorney-client relationship between counsel for these Defendants and the Attorney General's Office in this case does nothing to provide counsel influence over the province of the Attorney General's constitutional authority to supervise the prosecution of criminal cases in South Carolina. Therefore, for the reasons set forth above, counsel for these Defendants asserts that counsel for the Plaintiff has failed to set forth "good cause" for the issuance of a protective order to

6

seal the Plaintiff's deposition in this case. As such, these Defendants respectfully request that the Court deny the Plaintiff's motion.

        Respectfully submitted,

        s/William H. Davidson, II
        WILLIAM H. DAVIDSON, II, #425
        DAVIDSON & LINDEMANN, P.A.
        1611 Devonshire Drive, 2nd Floor
        Post Office Box 8568
        Columbia, South Carolina 29202-8568
        wdavidson@dml-law.com
        T: 803-806-8222
        F: 803-806-8855

        ATTORNEYS FOR DEFENDANTS WILLIAM
        FRICK, SOUTH CAROLINA OFFICE OF THE
        ATTORNEY GENERAL AND FAIRFIELD
        COUNTY SOLICITOR'S OFFICE

COLUMBIA, SOUTH CAROLINA

JULY 1, 2013