**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | | |
|---|---|---|
| David Ray Tant, | ) | Civil Action No.: 3:12-cv-03020-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| William Frick, Michael Stobbe, David | ) | |
| Tatarsky, and John Doe, individually, or | ) | |
| alternatively in their capacities as agents | ) | |
| of the South Carolina Department of | ) | **MEMORANDUM IN SUPPORT** |
| Corrections, the South Carolina Office of | ) | **OF MOTION FOR SUMMARY** |
| the Attorney General, the South Carolina | ) | **JUDGMENT ON BEHALF OF** |
| Department of Pardon, Probation and | ) | **DEFENDANTS WILLIAM FRICK,** |
| Parole, and the Fairfield County | ) | **SOUTH CAROLINA OFFICE OF** |
| Solicitor's Office, and therefore, the South | ) | **THE ATTORNEY GENERAL** |
| Carolina Department of Corrections, the | ) | **AND FAIRFIELD COUNTY** |
| South Carolina Office of the Attorney | ) | **SOLICITOR'S OFFICE** |
| General, the South Carolina Department | ) | |
| of Pardon, Probation and Parole, and the | ) | |
| Fairfield County Solicitor's Office, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Defendants William Frick, South Carolina Office of the Attorney General, and Fairfield County Solicitor's Office, by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion for Summary Judgment.

### NATURE OF THE CASE

Plaintiff was serving a sentence with the South Carolina Department of Corrections (SCDC) after pleading guilty to several charges including assault and battery of a high and aggravated nature and multiple charges related to dog fighting. As a result, the Plaintiff was

sentenced to forty years of confinement, which could be reduced to thirty years upon payment of restitution.  However, upon intake at SCDC, the Plaintiff's sentence was computed as only being for a period of fifteen years.  When this issue was recognized, the Plaintiff's information within SCDC's computer system was revised to reflect the sentence that had been handed down by the sentencing judge.  The Plaintiff challenged the correction to his sentence through the inmate grievance system and eventually appealed to the South Carolina Administrative Law Court.  This issue remains undecided, with the South Carolina Supreme Court having granted a writ of certiorari to consider whether the Plaintiff's sentence was improperly calculated by SCDC.  The Plaintiff initiated this action alleging that various individuals and governmental entities conspired to deprive him and did deprived him of the due process of law in changing his sentence.  Among these defendants is William Frick, who prosecuted the Plaintiff on behalf of the State of South Carolina as an Assistant Attorney General.  Defendant Frick later became employed by the Solicitor for the Sixth Judicial Circuit, which includes Fairfield County. The Plaintiff has also alleged various state law causes of action against the Defendants.

### STATEMENT OF THE FACTS

On April 7, 2004, Steven Baker was working as a land surveyor along a power-line easement in the vicinity of David Tant's property in Charleston County, South Carolina when he triggered a "spring-gun" and sustained significant injuries.  *See* Exhibit A, pp. 16–17.  Police officer's investigated the scene of the shooting and discovered, in addition to the improvised explosive device, a large dog kennel consistent with fighting-dog breeding and development.  *Id.* at pp. 17–20.  Numerous dogs were found at the site and taken into protective custody. *Id.*  As a result of the investigation, the Plaintiff was arrested and charged with assault and battery with intent to kill, possession of a dangerous animal, and numerous counts of owning an animal for

the purpose of fighting.  The case against the Plaintiff was prosecuted by the South Carolina Office of the Attorney General by Assistant Attorney Generals William Frick and Jennifer Evans.[1]  Both Frick and Evans were at all times acting within the course and scope of their official duties as prosecutors for the State of South Carolina through their employment with Office of the Attorney General.

At the conclusion of the State's case, the Plaintiff pled guilty to all charges seeking only that the assault and battery with intent to kill charge be reduced to assault and battery of a high and aggravated nature. *See* Exhibit B, Deposition of Tant, pp. 77–78.  On November 22, 2004, the Plaintiff was sentenced by the Honorable Wyatt T. Saunders.  During the sentencing hearing, the following exchange took place between Judge Saunders and Assistant Attorney General Jennifer Evans:

> [THE COURT:]  Are there any questions or comments? Take your time.

> MS. EVANS:  Your Honor, yes, I do have, if you could read exactly the first part of what you said the ABHAN and the remaining one, two, three, four, five animal fighting charges were and that sentence was.

> THE COURT:  In 2004-5829 Mr. Tant is convicted of assault and battery of a high and aggravated nature, for which he is confined to the State Department of Corrections for ten year.  […] In 2004-3473, 2004-3474, 2004-3475, 2004-3476, **those additional four indictments for which he has been convicted of animal fighting, are consecutive to each other and consecutive to 2004-5829**.  Is that clear?

> MS. EVANS: Okay, and then the next part?

> THE COURT: 2004-3477, 2004-3478, he has been convicted of animal fighting in both, for which he *is* confined to the State Department of Corrections in both for a term of five years consecutive to 2004-5829 as to both. However, the sentence *in*  these two sentences shall be null and void upon payment of restitution which *is* to be determined at a hearing or by agreement. Questions or comments?

> MS. EVANS: The State understands. Thank you, Your Honor.

---

[1] Jennifer Evans tragically died in June of 2009.

*See* Exhibit A, pp. 59–60 (emphasis added).  Judge Saunders recorded the Plaintiff's sentence on "sentencing sheets," which SCDC used in calculating the length of the Plaintiff's term of incarceration.  Those sentencing sheets read as follows:

    a.  Indictment 2004-5829, ABHAN: 10 years confinement
    b.  Indictment 2004-3473, Animal Fighting: 5 years consecutive to 5829
    c.  Indictment 2004-3474, Animal Fighting: 5 years consecutive to 5829
    d.  Indictment 2004-3475, Animal Fighting: 5 years consecutive to 5829
    e.  Indictment 2004-3476, Animal Fighting: 5 years consecutive to 5829
    f.  Indictment 2004-3477, Animal Fighting: 5 years consecutive to 5829, sentence shall be null and void upon payment of restitution;
    g.  Indictment 2004-3478, Animal Fighting: 5 years consecutive to 5829, sentence shall be null and void upon payment of restitution.

*See* Complaint, ECF Docket Entry # 1-1, ¶ 9.  The Plaintiff was then transferred into the custody of SCDC on or about November 23, 2004.  *Id.* at ¶ 11.  On December 22, 2004, Judge Saunders ordered the Plaintiff to pay $82,512.31 in restitution, noting in his order that payment of such amount would render the Plaintiff's sentences on Indictments 2004-3477 and 2004-3478 null and void, and thereby effectively reduce the Plaintiff's sentence from forty years to thirty years. *See* Exhibit C.  That Order unambiguously describes the Plaintiff's sentence as being for a term of forty years, rather than fifteen as the Plaintiff has attempted to argue through this litigation.

Upon the Plaintiff's entry into the Department of Corrections, SCDC staff members calculated the Plaintiff's sentence to be a total of fifteen years and entered that figure into its database which is accessible to the public via its website. Based upon a fifteen year sentence, the Plaintiff became eligible for parole on September 4, 2007, and  SCDC's online database reflected this parole eligibility date. *See* Complaint at ¶ 15.

In the meantime, Defendant Frick left the Office of the Attorney General in July of 2005 to take a position as an Assistant Solicitor for the Sixth Judicial Circuit.  *See* Exhibit D, Deposition of Frick, p. 57. Sometime thereafter, Mr. Frick searched SCDC's publically

accessible website and discovered that the Plaintiff's sentence as shown on SCDC's website was not what Judge Saunders had ordered during the sentencing phase of the Plaintiff's trial. *Id.* at pp. 40–41. As a result, Mr. Frick contacted SCDC employee Michael Stobbe, who works as a program coordinator in SCDC's Inmate Records Office, to inquire as to how the Plaintiff's sentence had been calculated. Mr. Stobbe verified that the Plaintiff's sentence had been calculated as fifteen years. *Id.* at p. 36; Exhibit E, Deposition of Stobbe, pp. 52–53. Mr. Frick contacted Mr. Stobbe again sometime later and explained to him that he would either prepare or seek an order from Judge Saunders to clarify that the Plaintiff had been sentenced to forty years of imprisonment, rather than fifteen years. *Id.* at pp. 55–56. However, Mr. Stobbe did not update the Plaintiff's sentence in SCDC's database at that time, nor did he take any action as a result of his communications with Mr. Frick. *Id.* at p. 58. Similarly, despite his assertion to Mr. Stobbe, Defendant Frick did not take any follow up action after his conversations with Mr. Stobbe. Deposition of Frick, pp. 50–51. To the contrary, Mr. Frick never contacted Judge Saunders, nor any member of his staff. *Id.* In fact, there has been no evidence presented that Mr. Frick ever contacted any SCDC employees other than Mr. Stobbe, nor did he contact any employees of the Defendant South Carolina Department of Probation, Parole, and Pardon Services (SCDPPPS) or anyone else concerning the Plaintiff's sentence.

At some point in 2007, SCDPPPS employee Jason Summers was assigned to conduct a pre-parole investigation of the Plaintiff. As a part of that investigation, Mr. Summers contacted Assistant Attorney General Jennifer Evans concerning the Plaintiff. *See* Exhibit F, Deposition of Summers, pp. 23–26. One of the key responsibilities of any pre-parole investigator is to determine whether an inmate is in fact eligible for parole. *Id.* at p. 7. The prosecuting attorney and the trial judge are two of five parties to which the pre-parole investigator directs inquires to

ascertain the appropriateness of an inmate's parole.  *Id.* at p. 14.  Mr. Evans questioned why the Plaintiff was being considered for parole, given the substantial sentence that had been delivered by Judge Saunders.  *Id.* at pp. 27–29.  As a result of their conversation, Mr. Summers contacted Judge Saunders' chambers.  *Id.* at p. 31.  Judge Saunders indicated to Mr. Summers that "he would take care of" the issue.  *Id.* at pp. 34–35.  At no point did either Mr. Summers or Mr. Frick communicate with each other regarding the Plaintiff's sentence.  *Id.* at p. 36; Deposition of Frick, p. 59.

On June 8, 2007, Judge Saunders wrote a letter to SCDC, copying the Plaintiff's criminal defense attorney, confirming his intention that the Plaintiff "receive a sentence of 10 years on the ABHAM charge and 5 years consecutive for each of the six charges of Animal Fighting, for a total of 40 years."  *See* Exhibit G (emphasis in original).  He further wrote that by paying restitution, the Plaintiff could reduce his sentence by ten years.  *Id.*  On June 12, 2007, the SCDC Inmate Records Office received the letter from Judge Saunders.  Deposition of Stobbe, p. 70. The next day, the Plaintiff's sentencing information was corrected in SCDC's information management system.  *Id.* at pp.  44, 62–70.  A classification officer subsequently met with the Plaintiff to inform him that his sentencing information had been updated on SCDC's computer system. *See* Deposition of Tant, pp. 46–47.

At some point in 2007, SCDPPPS began evaluating the Plaintiff for a parole hearing based upon the September 4, 2007 parole eligibility date.  During this time, the Plaintiff's sentencing information in SCDC's computer system was corrected to reflect the forty year sentence pronounced by Judge Saunders.  This correction meant that the Plaintiff would not be eligible for parole until June 25, 2010.  As a result, the pre-parole investigation regarding the

Plaintiff was ceased.  However, the investigation resumed prior to the Plaintiff's corrected parole eligibility date. *See* Deposition of Summers, pp. 47–48, 54–56.

On July 13, 2007, after the Plaintiff's sentencing information was corrected in SCDC's computer system, the Plaintiff filed an internal inmate step one grievance claiming that his sentence had been improperly changed.  After the Plaintiff's step one grievance was denied, the Plaintiff filed an step two grievance on January 17, 2008, again challenging the correction to his sentencing information.  After that grievance was denied, the Plaintiff appealed to the South Carolina Administrative Law Court.  The Administrative Law Court remanded the case back to SCDC for reconsideration on October 27, 2008.  *See* Exhibit I.  After SCDC again denied the Plaintiff's step-two grievance, the Plaintiff again appealed to the Administrative Law Court.  The Administrative Law Court affirmed SCDC's decision in an order dated February 4, 2010.  *See* Exhibit J.  the Plaintiff appealed this decision to the South Carolina Court of Appeals.

During the pendency of his appeal to the Court of Appeals, the Plaintiff paid restitution in compliance with Judge Saunders' Order for Restitution, which rendered the Plaintiff's sentences on indictments 2004-3477 and 2004-3478 null and void.  As a result, the Plaintiff obtained parole eligibility on June 25, 2010, and was released on parole on September 16, 2010.

On October 26, 2011, the South Carolina Court of Appeals reversed the Administrative Law Court's decision. *David Ray Tant v. S.C. Dep't of Corrections*, 395 S.C. 446, 718 S.E.2d 753 (Ct. App. 2011), *cert granted*.  The South Carolina Department of Corrections filed a petition for writ of certiorari to the South Carolina Supreme Court, which was granted on February 7, 2013.  Exhibit K.  That appeal remains pending.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must establish any disputed facts by showing the "fact cannot be or is genuinely disputed". Rule 56(c), FRCP.  If a party "fails to properly address another party's assertion of fact," the court may consider the fact undisputed and grant summary judgment, if appropriate. Fed.R.Civ.P. 56(e). When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986).  The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material issue for trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).  The nonmovant's proof must then meet "the substantive evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data General Corporation*, 12 F.3d 1310, 1316 (4th Cir. 1993).

**DISCUSSION**

I.   **Plaintiff's Federal Law Causes of Action Against Defendants William Frick, the Office of the Attorney General, and the Solicitor for the Sixth Circuit Fail as a Matter of Law.   Therefore, Summary Judgment in Favor of These Defendants is Appropriate.**

   A.   *Defendant Frick Was Not Acting Under Color of State Law as Required under 42 U.S.C. § 1983 and Therefore, Plaintiff's Federal Causes of Action Against Him Must Be Dismissed*

At all times relevant to the Plaintiff's lawsuit, Defendant Frick was not acting under "color of state law" as required by 42 U.S.C. § 1983.  Therefore, the Plaintiff's federal claims against him must be dismissed. "[I]t is clear that in a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). It is well established that "merely private conduct, no matter how discriminatory or wrongful fails to qualify as state action." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). In sum, "'private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party" is insufficient.'" *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009)).

Defendant Frick was no longer employed by the South Carolina Office of the Attorney General at the time of the conduct complained of in this action. Deposition of Frick, pp. 43–45. The uncontroverted evidence indicates three distinct actions taken by Defendant Frick that the Plaintiff complains of.  First, at some point after leaving the Office of the Attorney General, Defendant Frick checked SCDC's public website and saw that the sentence imposed upon the

Plaintiff by Judge Saunders was not the sentence shown on SCDC's database.  Deposition of Secondly, Frick contacted Mr. Stobbe via telephone to see if the website correctly reflected SCDC's calculation of the Plaintiff's sentence.  Thirdly, Defendant Frick again contacted Mr. Stobbe and indicated that he would follow up with Judge Saunders, though he in fact did not take such additional action.  *Id.* at pp. 50–51.  These actions were taken by Frick out of personal interest in attaining information.  *Id.* at p. 41.  Importantly, all of these actions could have been undertaken by any member of the general public and would have equally been insignificant to the Plaintiff's interests.  Even if the Office of the Attorney General acquiesced or approved of Defendant Frick's actions—although there is no evidence for such approval—the "color of state law" standard has not been met in this case.[2]  Because Defendant Frick's conduct was not taken under color of state law, causes of action pursuant to 42 U.S.C. § 1983 are not cognizable against Defendant Frick.

Furthermore, because Defendant Frick's conduct does not sustain an action under § 1983, the Plaintiff has likewise failed to state an official capacity cause of action against the Office of the Attorney General and the Solicitor for the Sixth Judicial District.  The Plaintiff has alleged no conduct by these entities separate and apart from the wholly conduct of Defendant Frick.

**B.    *The Solicitor for the Sixth Judicial Circuit is Not a Proper Party to this Action and Should be Dismissed With Prejudice***

Though the Plaintiff brings allegations against the Fairfield County Solicitor's office in his Complaint, no such agency exists.  Instead, the proper party would be the Solicitor for the Sixth Circuit, who is currently Douglas A. Barfield.  *See* Affidavit of Barfield.  All of the Plaintiff's allegations in this case concern alleged actions taken by Defendant Frick.  However, none of the conduct alleged to have violated the Plaintiff's constitutional rights, nor conduct

---

[2] The "under color of state law" and the "scope of employment" analyses are distinctive and the presence of one does not require the application of the other.

alleged as tortious under state law, occurred within the course and scope of Defendant Frick's employment as an Assistant Solicitor for the Sixth Judicial Circuit. *See* Affidavit of Barfield, ¶ 4; Deposition of Frick, pp. 44 – 46. Because Defendant Frick was not acting within the scope of his official duties as an Assistant Solicitor for the Sixth Judicial Circuit, that entity is not amenable to suit under any theory of liability, whether based in federal or state law. Furthermore, the Plaintiff has alleged no facts and the evidence asserted does not demonstrate that there was ever the slightest involvement by the Sixth Circuit Solicitor in prosecuting the Plaintiff or in considering the Plaintiff's parole eligibility. To the contrary, the only evidence that has been presented indicates that at no time was the Sixth Circuit Solicitor's Office ever involved with the Plaintiff's prosecution or parole consideration. *See* Affidavit of Barfield, ¶ 5.

Furthermore, the South Carolina Tort Claims provides that a "governmental entity is not liable for a loss resulting from … employee conduct outside the scope of his official duties…." S.C. Code Ann. § 15-78-60(17) (1976). "'Scope of official duty' … means (1) acting in and about the official business of a governmental entity and (2) performing official duties." § 15-78-30(i). The Sixth Circuit Solicitor's Office had no role in prosecuting the Plaintiff, nor was the Sixth Circuit Solicitor involved in determining the Plaintiff's parole eligibility. See Affidavit of Barfield, ¶ 5. The fact that Defendant Frick was employed[3] by the Sixth Circuit Solicitor at the time that he inquired about the Plaintiff's sentence calculation was merely coincidental and should be of no issue in creating liability on the part of the Sixth Circuit Solicitor, as Defendant Frick was not acting on behalf of his employer. Deposition of Frick, pp. 42–44. Therefore, the Plaintiff's causes of action against the Sixth Circuit Solicitor should be dismissed.

---

[3] It was understood that Frick would have to attend to some matters for the Office of the Attorney General was understood when he started his employment for the Sixth Circuit Solicitor. Upon accepting that employment, Frick informed the Solicitor that he had on-going obligations regarding dog-fighting prosecutions, including the prosecution of the Plaintiff, which would require his attention. Deposition of Frick, pp. 43–44.

### C. If Defendant Frick Was Not Acting in His Private Capacity, Then All of His Actions Were Taken in the Scope of His Official Duties as an Assistant Attorney General. Therefore the Office of the Attorney General is not a Proper Party to This Action and Should be Dismissed with Prejudice

If it is determined that Defendant Frick was not acting within his personal capacity, then the Defendants would assert that all of Defendant Frick's actions were made on behalf of and in the scope of his official duties as a prosecutor with the Attorney General's Office. In *Kentucky v. Graham*, the United States Supreme Court determined that "[o]fficial capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent." 473 U.S. 159, 165, 105 S.Ct. 3099 (1985); *see also Hughes v. Blankenship*, 672 F.2d 403 (4th Cir. 1982). In other words, a state official sued in his or her official capacity is the alter ego of the State, and as such, is not subject to suit pursuant to 42 U.S.C. § 1983, because the state is not a "person" amenable to suit for monetary damages under § 1983. *Will v. Michigan State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Though the Plaintiff has pled that he is entitled to injunctive relief, Defendants are left to speculate as to the nature of the relief sought. Presumably, the Plaintiff seeks an end to the "continuing effect of the parole to which he is subject" under the terms of the forty year sentence. *See* Complaint, ¶ 76. If, in fact, this is the Plaintiff's sought after injunctive relief, the claim is invalid, and should be dismissed. At this point, the Plaintiff has not served any form of confinement in excess of a fifteen year sentence. Therefore, any injunction sought would merely be one for these Defendants to obey the law upon the termination of the parole period consistent with the Court of Appeals decision in *David Ray Tant v. South Carolina Department of Corrections*, 395 S.C. 446, 718 S.E.2d 753 (Ct. App. 2011), *cert granted*. Without remaining claims for prospective relief, only the Plaintiff's claim

for money damages remain. However, claims for monetary damages against state agencies such as the Attorney General's Office are not cognizable and must be dismissed.

### D. Defendant Frick is Subject to the Absolute Immunity from Suit Afforded by the Prosecutorial Immunity Doctrine and Therefore the Plaintiff's Federal and State Law Causes of Action Must be Dismissed

The Plaintiff's federal law causes of action styled under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 are barred by reason of the well-established unqualified, absolute immunity afforded to prosecutors. With few exceptions, prosecuting attorneys are afforded absolute immunity from civil damages for acts done in the exercise of prosecutorial discretion and for a prosecuting attorney's quasi-judicial functions in criminal matters. The seminal case which defines the scope of the immunity enjoyed by prosecutors is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The *Imbler* Court held that when prosecutors perform advocative functions that are "intimately associated with the judicial phase of the criminal process," they are absolutely immune from civil suit. *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. Recognizing that absolute immunity could potentially "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," the Court noted that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *See Imbler*, 424 U.S. at 427, 96 S.Ct. 984; *see also Goldstein v. Moatz*, 364 F.3d 205 (4th Cir. 2004).

Absolute prosecutorial immunity also covers the actions of prosecutor's occurring after the criminal defendant is convicted and sentenced.[4] Importantly, the *Imbler* Court recognized that there is a continuing duty on the part of the prosecutor concerning the defendants that he or

---

[4] While in *Imbler* the Supreme Court's application of absolute prosecutorial immunity was limited to the initiation and pursuing of a criminal prosecution, the doctrine has been applied through the entire prosecutorial process. *See Ehrlich v. Giuliani*, 910 F.2d 1220, 1222 (4th Cir. 1990) (recognizing the immunity as appropriate for post-conviction prosecutorial activities).

she has prosecuted and that this post-conviction interaction in the case was subject to the important policy goal of protecting the "vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427-428, 96 S.Ct. at 993–994. The Court considered the possible conflict arising when post-conviction mitigating evidence came to the attention of the prosecutor and recognized that a lack of immunity in the post-conviction phase "could dampen the prosecutor's exercise of his duty to bring to the attention of the court or of proper officials all significant evidence suggestive of innocence or mitigation." *Imbler*, 424 U.S. at 409, 96 S.Ct. at 993, n. 25.

Correspondingly, the Fourth Circuit has recognized the immunity in the post-conviction environment granting absolute immunity where a prosecutor "was handling the post-conviction motions and the initial direct appeal ... [and thus] still functioning as an advocate for the State". *Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994). *Carter* involved a § 1983 action brought against prosecutors for the suppression of exculpatory evidence related to the plaintiff's post-conviction relief proceeding (for which he was later retried and acquitted) on charges of shooting his ex-wife. *Carter*. 34 F.3d at 263. Importantly, the *Carter* court de-couples the prosecutor's action from the official title he holds finding that "the immunity afforded to prosecutors attaches to the functions they perform, and not merely to the office." *Carter*, 34 F.3d at 261–62.

Absolute prosecutorial immunity is often applied to the post-conviction conduct of prosecutors.[5] This functional approach has been recognized as appropriate in "parole

---

[5] Outside of the Fourth Circuit, the application of absolute immunity in the post-conviction and parole context is well established for both prosecutors and those functioning in prosecutor-like roles. *See Farrish v. Mississippi State Parole Board*, 836 F.2d 969 (5th Cir.1988), finding absolute immunity for a parole revocation hearing officer and the parole officer for conduct occurring during a parole revocation hearing; *Johnson v. Kegans*, 870 F.2d 992, 997 (5th Cir. 1989), finding individuals who function before parole board in same capacity as prosecutor, witness or probation officer enjoy absolute immunity; *Freeze v. Griffith*, 849 F.2d 172, 174–75 (5th Cir.1988) finding probation officers immune from liability for preparing and submitting presentence report; *Brown v. Nester*, 753 F.Supp. 630, 632–33 (S.D.Miss.,1990), affording the Defendant absolute immunity for claims related to his function during the parole revocation process.

proceedings, where the prosecutor is personally involved in the subsequent proceedings and continues his role as an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003). Even though Defendant Frick was no longer a prosecutor for the Office of the Attorney General, absolute immunity is appropriate here because the immunity does not "rest on an individual's status as a prosecutor." *Houston v. Partee*, 978 F.2d 362, 366 (7th Cir. 1992).

The doctrine of absolute prosecutorial immunity applies to the actions of Frick in this action and therefore, the claims against him fail and should be dismissed with prejudice. Defendant Frick's conduct in ensuring that the Plaintiff's sentence, secured through his efforts and those of Jennifer Evans, was executed in accordance with Judge Saunder's ruling was within the prosecutor's advocative capacity and for the benefit of the State. Defendant Frick was present in the courtroom when Judge Saunders sentenced the Plaintiff to forty years for the assault and battery of a high and aggravated nature and dog fighting charges to which he pled guilty. Judge Saunders unambiguously pronounced a forty-year sentence. When Defendant Frick became aware that the Plaintiff's sentence, as reported on the SCDC website, was inconsistent with the sentence pronounced at the trial, he was prompted to discuss the Plaintiff's sentence with Ms. Evans. Deposition of Frick, pp. 41–42. These facts support only one inference: that Frick was working in concert with his colleague to ensure that the sentence secured by the State's prosecution of the Plaintiff was lawfully enforced.

In close cases, courts drawing the line and deciding whether absolute immunity applies consider "the centrality of the challenged conduct to the criminal justice system; the substantiality of the threat of vexatious litigation, and the extent to which that threat would inhibit performance of important public duties; and the availability of alternative mechanisms to safeguard against prosecutorial misconduct." *Ehrlich v. Giuliani*, 910 F.2d 1220, 1223 (4th Cir.

1990) (quoting *Allen v. Lowder*, 875 F.2d 82, 85 (4th Cir.1989)).[6] Under this analysis, absolute immunity is appropriate here. In South Carolina, the prosecutor is an essential figure to determining whether parole is appropriate for an individual inmate. The prosecutor is one of five parties from which the pre-parole investigator is required by policy to solicit input regarding the appropriateness of parole. *See* Deposition of Summers, p. 14. The Legislature has mandated that prosecutors be informed in writing during the parole consideration process. S.C. Code Ann. § 23-21-221. Therefore, Frick's involvement in the parole consideration is advocative as a matter of state law. Given the uncontradicted testimony that prosecutors are always involved in this stage of the criminal justice system, it is indisputable that Defendant Frick's activities were "intimately associated with the judicial phase of the criminal process" and therefore subject to absolute immunity. *Imbler*, 424 U.S. at 430, 96 S.Ct. 984.

Likewise, as to the Plaintiff's remaining state law causes of action, Defendant Frick is entitled to the benefit of absolute prosecutorial immunity from suit by virtue of the dual protections afforded under the common-law doctrine and the statutory immunity of the South Carolina Tort Claims Act. The Tort Claims Act unambiguously states that it is the General Assembly's intent to "provide for liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty, only to the extent provided herein. All other immunities applicable to a governmental entity, its employees, and agents are expressly

---

[6] While the Fourth Circuit only afforded the prosecutor in *Allen* qualified immunity, that case is distinguishable in several important respects. *Id*. 875 F.2d at 85. In *Allen*, the Plaintiff was acquitted on appeal and was thereafter transferred from the state correctional facility to a county jail to be out-processed from the system. The receiving jail was opposed to housing him due to past problems with the Plaintiff and requested that the Prosecutor prevent his transfer there. The prosecutor, with full knowledge that the Plaintiff had been acquitted, caused an order to be issued returning the Plaintiff to the State correctional facility where he remained for a number of weeks past his release date. Several facts here distinguish Carter from the instant action and reinforce the appropriateness of absolute immunity for Frick. First, the Plaintiff here had not been acquitted of his offense and had no right to be released from incarceration. Second, there is uncontradicted testimony here that Frick in no way caused an order to issue and therefore, the causative link between the *Allen* prosecutor's actions and that Plaintiff's unjustified incarceration are completely absent here.

preserved." S.C. Code Ann. § 15-78-20(b).  It is well established that the terms of  the Tort

Claims Act expressly preserve common law judicial immunity. *Williams v. Condon*, 347 S.C.

227, 246–47, 553 S.E.2d 496, 507 (Ct. App. 2001) (finding the Tort Claims Act preserves the

protections guaranteed by the prosecutorial immunity doctrine).  South Carolina Courts have

held that:

> [A] prosecutor in the employ of this state is immune from personal
> liability under § 1983 or the South Carolina Tort Claims Act for
> actions relating to the prosecution of an individual as a criminal
> defendant—regardless of the prosecutor's motivation—provided
> the actions complained of were committed while the prosecutor
> was acting as an 'advocate,' as defined by *Imbler v. Pachtman* and
> its progeny.

Id. at 250, 553 S.E.2d at 509.  In this case, all of Frick's conduct complained of was advocative

on behalf of the State to ensure that the sentence handed down to the Plaintiff following his

guilty plea was lawfully enforced.  Therefore, Defendant Frick is immune to suit on the state law

causes of action.

> **E.**      ***Defendant Frick is Subject to the Qualified Immunity from
> Suit Announced in Harlow v. Fitzgerald and Its Progeny and
> Therefore, Plaintiff's § 1983 Claim Must be Dismissed with
> Prejudice***

Defendant Frick is immune from suit for alleged violations of Plaintiff's constitutional

rights by virtue of the qualified immunity doctrine announced in *Harlow v. Fitzgerald*. 457 U.S.

800, 102 S.Ct. 2727 (1982). "Qualified immunity shields government officials performing

discretionary functions from suits for civil damages under § 1983." *Ridpath v. Bd. of Governors

Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). "The qualified immunity inquiry asks (1)

whether an official violated a federal right, and (2) whether that right was clearly established at

the time the official acted." *Hensley v. Koller*, 722 F.3d 177, 181 (4th Cir. 2013) (quoting

*Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001)). "A court may address the second

question—whether a right is clearly established—without ruling on the first—existence of the right." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009). Qualified immunity is not only a defense to liability but is also an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 105 S.Ct. 2806 (1985).

The Plaintiff has alleged a deprivation of his 14th Amendment right to due process of law presumably for the time served in excess of a fifteen year sentence. In other words, the deprivation claimed by the Plaintiff stems from the imposition of the parole date calculated according to the forty year sentence (reduced by ten years in accordance with restitutionary mitigation). However, this three year period of confinement was within the sentence imposed under even a fifteen year interpretation of the sentence sheets. Essentially, the Plaintiff is claiming that the Defendants deprived him of liberty without due process of law for not releasing him for parole earlier, rather than later, within his sentence of confinement. Therefore, the Plaintiff has failed to state a claim for relief as he has no due process right to a particular conditional release from his lawful sentence.

The Fourteenth Amendment's Due Process Clause guards against unlawful deprivations of liberty. U.S. Const. Amend. XIV, § 1. "It is well-established in the context of parole that '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.' Accordingly, to the extent the Inmates enjoy a protectable interest in parole, this interest must find its roots in rights imparted by [state] law." *Burnette v. Fahey* 687 F.3d 171, 181 (4th Cir. 2012) (quoting *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100 (1979)). The Plaintiff's "conviction, with all its procedural safeguards, has extinguished that liberty right: Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Greenholtz*, 442 U.S. at 7,

99 S.Ct. 2100. Even the "mutually explicit understanding that inmate would be paroled does not create liberty interest." *Slezak v. Burtt*, No. 4:07-00661-RBH,  2008 WL 4308149, *12 (D.S.C., Sept. 15, 2008) (quoting *Jago v. Van Curen*, 454 U.S. 14, 18-20, 102 S.Ct. 31, (1981)).

As there is no federal liberty interest recognized under federal law, due process rights exist for an inmate "only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996); *See also Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991). The South Carolina Supreme Court has found that "[a]lthough [§ 24-21-640] creates a liberty interest in parole eligibility, it does not create a liberty interest in parole." *Slezak v. Burtt*,  No. 4:07-00661-RBH,  2008 WL 4308149, *12 (D.S.C. Sept. 15, 2008) (quoting *Furtick v. South Carolina Dep't of Probation, Parole & Pardon Services*, 352 S.C. 594, 576 S.E.2d 146, 149 (2002)). The Plaintiff's parole eligibility was never altered or amended, only the underlying sentence according to which the parole eligibility date is determined.  As such, the only due process violation which the Plaintiff has asserted is one that has not been recognized by the South Carolina Court, and correspondingly, it does not exist in the Supreme Court's due process jurisprudence as announced in *Greenholtz*. Therefore, the Plaintiff's claim that his due process right to parole was violated by the Defendants is without merit and the Defendants are entitled to qualified immunity.

Under the second prong of the *Harlow* immunity analysis, the court must consider whether that right was clearly established at the time the official acted. The second prong is "a test that focuses on the objective legal reasonableness of an official's acts." *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727 (1982). "An official will not be held liable unless '[t]he contours of the right [he is alleged to have violated were] sufficiently clear that a reasonable official would understand

19

that what he is doing violates that right.'" *Henry v. Purnell*,  652 F.3d 524, 534 (4th Cir. 2011)

quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

As the Plaintiff has no due process right to a particular parole date, the analysis turns to

whether Defendant Frick's actions were objectively reasonable in light of the law in 2004. The

Plaintiff asserts that he has a due process right to not have a former prosecutor contact other state

agents in order to verify SCDC's prison sentence calculation.  There is no way that even if such a

right could be articulated, it was clearly established in 2004 when the allegedly unconstitutional

conduct occurred.  First, prosecutors in the State of South Carolina have a statutory role in the

SCDPPPS's parole evaluation process. Under § 23-21-221, the Parole Board must inform the

inmate's prosecutor in writing within thirty days of a parole hearing. S.C. Code Ann. § 23-31-

221 (1976).  Furthermore, the SCDPPPS's own procedures require investigators to contact

former prosecutors to establish the inmate's parole status.  The inmate's prosecuting attorney is

one of five parties from whom the Department elicits input regarding the parole decision.

Deposition of Summers, p. 14. There is no reasonable argument that Frick would know that

checking a publically accessible website and making two phone calls could possibly threaten the

Plaintiff's constitutionally protected due process rights. *See Simmons v. Poe*, 47 F.3d 1370, 1385

(4th Cir.1995) (holding that to determine whether a right is clearly established, a court should not

focus on the right at its most general level, but rather at the level of its application to the specific

conduct being challenged).

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing

bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992. Because there was no

clearly established due process right prohibiting former prosecutors from checking the publically

accessible SCDC website or from making an inquiry to a corrections employee, Defendant Frick

is entitled to summary judgment by virtue of his qualified immunity from suit and the claims against him should be dismissed with prejudice.

> **F.     Plaintiff's Putative 42 U.S.C. § 1985(3) Claim, or Alternatively, Conspiracy to Violate 42 U.S.C. § 1983 Claim, Fails to State a Claim Upon Which Relief may be Granted and Is Furthermore Subject to Defendant Frick's Established Qualified Immunity Defense Therefore This Claim Must Fail and Be Dismissed with Prejudice**

Plaintiff has alleged that the individually named Defendant's engaged in a "conspiracy to violate civil rights." Complaint ¶¶ 80 – 82. Plaintiff has not specified whether his accusation is styled as a conspiracy to violate 42 U.S.C. § 1983 or a conspiracy in violation of 42 U.S.C. § 1985(3). Each will be addressed in turn.

As an initial matter, a claim based on either theory is subject to the previously articulated qualified immunity defense according to which these claims must be dismissed against these Defendants. Because these different causes of action arise from the same factual allegations, *Harlow* immunity applies with equal force. *Gooden v. Howard County, Md.*, 954 F.2d 960, 970 (4th Cir. 1992). In *Gooden*, the Fourth Circuit addressed the risk of allowing a civil conspiracy allegation to undermine qualified immunity doctrine. First, there is a heightened pleading requirement under either § 1985(3) or § 1983 requiring the Plaintiff to "plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden* , 954 F.2d at 969–70. That pleading requirement fails where, as here, the Plaintiff merely recites the elements of the cause of action. *See* Complaint, ¶¶ 80 82. The Court further noted the incredibly rare set of facts where an officer's conduct might be at once objectively reasonable but subjectively unreasonable thereby allowing a § 1985(3) action to survive summary judgment for qualified immunity on a § 1983 cause of action. *Gooden*, 954 F.2d 960, 969. This is not one of those rare situations.

Therefore, Defendant Frick's qualified immunity defense is sufficient to undermine the Plaintiff's § 1983(3) cause of action and it must be dismissed with prejudice.

The Plaintiff has failed to meet the pleading standard to support a § 1983 conspiracy action. To establish a civil conspiracy under § 1983, Plaintiff must allege sufficient factual allegations that would "reasonably lead to the inference" that the co-conspirators "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan" to deprive Plaintiff of a constitutional right. *Graves v. Stevens*, C/A No. 3:12–826–JFA–SVH, 2013 WL 2423798, *1 (D.S.C. June 4, 2013) (quoting *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir.1996)). Here, the Plaintiff has failed to meet the pleading standard and can still cite no evidence of a positive and tacit understanding to attempt to accomplish any unlawful objective.

If, alternatively, the Plaintiff is alleging that the Defendant Frick conspired in violation of § 1985(3) that claim is simply inapplicable under these facts and must be dismissed with prejudice. As "§ 1985(1) forbids conspiracies to prevent an officer from performing his duties and § 1985(2) prohibits conspiracies aimed at intimidating a party, witness, or juror to a court proceeding" it must be assumed that the Plaintiff is asserting the more commonly employed § 1985(3). *Deakins v. Pack*, C/A No. 1:10–cv–013962013, WL 3716655, *55 n. 8 (S.D.W.Va., July 12, 2013). However, it is not entirely clear how this statute has any applicability to the Plaintiff's allegations. In *Simmons v. Poe*, the Fourth Circuit held:

> The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

> Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights.

47 F.3d 1370, 1376–77 (4th Cir. 1995). To the degree that the Plaintiff has alleged "class-based, invidiously discriminatory animus" in the form of his Sixth Cause of Action he has failed to identify the class at issue or explain how he has been treated differently than other similarly situated persons. Furthermore, the Plaintiff "fails to state a claim that is plausible rather than speculative." *Patterson v. AutoZone Auto Parts, Inc.*, No. 0:10–2438–MB, 2011 WL 379427, *3 (D.S.C., Feb. 3, 2011).  As § 1985 is directed towards equal protection claims, a Plaintiff must additionally set forth facts to show that "some racial, or perhaps otherwise class-based, invidious discriminatory animus lay behind the alleged conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999); *see also Smith v. Coffy*, No. 2:08–cv–201–RMG, 2011 WL 2418528, *3 (D.S.C. June 13, 2011).  To meet the requirement of a class-based discriminatory animus, under this section the class must possess the "discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Bellamy v. Mason's Stores, Inc.*, 368 F.Supp. 1025, 1028 (E.D.Va.1973), aff'd, 508 F.2d 504 (4th Cir.1974). The Plaintiff has not alleged that the Defendants, either individually or in pursuit of an alleged conspiracy, violated the Plaintiff's right to the Equal Protection of the laws as secured by Art. XIV of the U.S. Constitution.  Instead, the Plaintiff's Complaint appears to assert only a violation of the due process of laws.  Having failed to state a claim under 42 U.S.C. § 1985(3), the Plaintiff has effectively duplicated his state law conspiracy claim and therefore any claim arising under the federal statutory civil conspiracy cause of action must fail.  Therefore, with regard to the Plaintiff's cause of action brought under § 1985, the Defendants' motion for summary judgment should be granted and the Plaintiff's claims dismissed with prejudice.

II.     **Plaintiff's State Law Causes of Action are Specifically Exempted from the General Waiver of Immunity According to the South Carolina Tort Claims Act and Therefore Must be Dismissed with Prejudice**

Plaintiff's state law claims for outrage, civil conspiracy, and negligence are subject to dismissal under various exceptions to the Legislature's limited waiver of sovereign immunity contained within the South Carolina Tort Claims Act. The Tort Claims Act is the "exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty." S.C. Code Ann. § 15-78-200 (2005). The Act provides that "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." § 15–78–40 (2005). These provisions must be liberally construed in favor of limiting the government's liability. S.C Code Ann., § 15-78-20(e). *See Bakers v. Sanders*, 301 S.C. 170, 391 S.E.2d 229 (1990); *See also Strother v. Lexington County Recreation Commission*, 332 S.C. 54, 504 S.E.2d 117 (1998). This rule of construction is also in accord with the well-established principles that any law in derogation of common law must be strictly construed. *Watson v. Sellers*, 299 S.C. 426, 385 S.E.2d 369 (S.C. Ct. App. 1989). These Defendants are immune from these state law causes of action by virtue of the exceptions to the waiver of immunity codified in § 15-78-60(1), (2), (3), (5), (21), and (23).

As a prosecutor, Defendant Frick is entitled to the Tort Claims Act's exception from the waiver of immunity for "legislative, judicial, or quasi-judicial action or inaction; and administrative action or inaction of a legislative, judicial, or quasi-judicial nature." § 15-78-60(1) and (2). *See Williams v. Condon*, 347 S.C. 227, 249, 553 S.E.2d 496, 508 (Ct. App. 2001) (applying these immunities to prosecutorial conduct). Likewise, "[s]ection 15-78-60 provides:

The governmental entity is not liable for a loss resulting from: (3) execution, enforcement, or implementation of the orders of any court or execution, enforcement, or lawful implementation of any process." *Wortman v. Spartanburg*, 310 S.C. 1, 3, 425 S.E.2d 18, 19 (1992). Defendant Frick, acting on behalf of the Office of the Attorney General was simply implementing the recognized process of prosecutorial involvement in executing the sentence imposed by order of Judge Saunders and therefore, this action must be dismissed. Furthermore, the Tort Claims Act's immunity for the "prosecution of any judicial or administrative proceeding" applies with equal force here. § 15-78-60(23). As the Fourth Circuit has recognized, prosecutors engaged in certain post-conviction activities are "still functioning as an advocate for the State". *Carter v. Burch*, 34 F.3d 257, 263 (4th Cir.1994).

Defendants are also immune for "the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." S.C. Code Ann. § 15-78-60(5). In order to establish this immunity, there must be a showing that "the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice using accepted professional standards." *Sabb v. South Carolina State University*, 350 S.C. 416, 567 S.E.2d 231 (2002).  Whenever a prisoner is subject to parole consideration, statute requires that the prosecuting solicitor be contacted by written notice. § 24-21-221. The solicitor is asked to provide a recommendation on whether the prisoner should or should not be paroled, a clear discretionary function.  Deposition of Summers, p. 14. Standards of professional conduct required Frick to advocate for the interests of the State of South Carolina.[7]  As a matter of

---

[7] "A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.  A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." SCRPC 1.3(1).

course, solicitors make a choice between two alternatives, to recommend or to not recommend parole, and are bound by professional standards in that decision. Therefore, these Defendants are entitled to discretionary immunity and this action must be dismissed.

The Legislature also excepted from the waiver of immunity losses resulting from "the decision to or implementation of ... parole … of any person in the custody of any governmental entity, including but not limited to a prisoner [or] inmate…." § 15-78-60(21). The actions of these Defendant's in engaging in the standardized parole review process fits squarely within this exception. "The language of the exemption indicates the custodial entity must make a conscious, if not formal, decision to terminate the relationship before this immunity is triggered." *Faile v. South Carolina Dept. of Juvenile Justice*, 350 S.C. 315, 333, 566 S.E.2d 536, 545 (2002). Frick's actions were merely one machination of the State's exercise of its formal decision to deny Tant parole because of his actual sentence. Therefore, this immunity applies and dismissal of the Plaintiff's claims is warranted.

### A.    *Plaintiff's Intentional Infliction of Emotional Distress (Outrage) Claim is Barred by the South Carolina Tort Claims Act and Therefore Must be Dismissed with Prejudice*

The Tort Claims Act excludes the intentional infliction of emotional harm from the definition of "loss" for which a government may be liable under the Tort Claims Act. *See* S.C. Code Ann. § 15-78-30(f) and *Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 647 (D.S.C. 2006). Therefore, even if the Plaintiff could establish the elements of the cause of action, he cannot recover against these Defendants for any losses attributable to that tort.

As to the Plaintiff's outrage claim against Defendant Frick in his individual capacity, the claim fails as a matter of law and must be dismissed. To recover for the common law tort of outrage, a plaintiff must prove the following elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Ford v. Hutson*, 276 S.C. 157, 276 S.E.2d 776, 778 (1981).

Under South Carolina law, a trial judge serves a "gatekeeper" function with respect to outrage claims. The trial court is required to first determine as a matter of law "whether on the evidence before it, the defendant's conduct may reasonably constitute outrageous conduct." *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 283 S.C. 155, 321 S.E.2d 602, 609 (Ct. App. 1984), *quashed on other grounds*, 287 S.C. 190, 336 S.E.2d 472 (1985). In other words, "the question of whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery is one for the court, and only where reasonable persons might differ is the question one for the jury." *Hawkins v. Greene*, 311 S.C. 88, 90, 427 S.E.2d 692, 693 (S.C. Ct. App. 1993). In a majority of cases, the South Carolina appellate courts have found that a variety of conduct does not give rise as a matter of law to the tort of outrage. A survey of appellate rulings is set forth in the Court of Appeals' decision in *Gattison v. South Carolina State College*, 318 S.C. 148, 456 S.E.2d 414 (S.C. Ct. App. 1995). The survey clearly reflects that the tort of outrage is not favored by South Carolina's appellate courts and should be reserved for only the most atrocious conduct. Indeed, our courts have repeatedly noted "the widespread reluctance of courts to permit the tort of outrage to become a panacea for wounded feelings rather than reprehensible conduct." *Todd*, 283 S.C. at 171, 321 S.E.2d at 611.

In the instant action, the Plaintiff has merely recited the elements of the tort of outrage in his pleadings but has produced no evidence to support that allegation. *See* Complaint, ¶¶ 57–61. The Plaintiff has produced no evidence of outrageous conduct by Defendant Frick. Instead, the uncontradicted record reveals nothing more than Frick making inquiries concerning the Plaintiff's incarceration status. Frick checked the SCDC website for this information. Deposition of Frick, p 41. Frick likely called his former co-counsel to find out if anything had been done to correct SCDC's calculation of the Plaintiff's sentence. Deposition of Frick, pp. 41–42. Frick called Michael Stobbe on two occasions to see what the SCDC's sentencing record was for the Plaintiff. Deposition of Stobbe, pp. 52, 55–56. The result of these communications was that Frick did nothing to follow-up on his inquiry. Deposition of Frick, p. 46. Frick did not contact Judge Saunders or his staff. *Id.* at pp. 38, 50. He did not draft an order to clarify the Plaintiff's sentence. *Id.* at pp. 37–38. He never spoke with David Tatarsky concerning Tant's sentence. *Id.* p. 46. None of Defendant Frick's actions can reasonably be classified as "conduct so extreme and outrageous that it exceeded all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community." *Ford*, 276 S.C. at 162, 276 S.E.2d at 778. Therefore, the Plaintiff's claim for the intentional infliction of emotional distress against Defendant Frick fails and must be dismissed with prejudice.

## B.   *Plaintiff's Civil Conspiracy Cause of Action Fails as a Matter of Law and Therefore Must be Dismissed with Prejudice*

Under South Carolina law "[a] civil conspiracy ... consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Anthony v. Ward*, 336 Fed.Appx. 311, 315 (4th Cir. 2009) (citing *Lee v. Chesterfield Gen. Hosp., Inc.*, 289 S.C. 6, 344 S.E.2d 379, 382 (1986)). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other

claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." *Calloway v. Abston*, C/A No. 1:09–1925–TLW–SVH, 2010 WL 3609782, *8 (D.S.C., August 10, 2010), (quoting *Hackworth v. Greywood at Hammett, LLC,* 385 S.C. 110, 682 S.E.2d 871, 874 (S.C. 2009)). Plaintiff failed to allege additional facts in furtherance of a conspiracy, nor did he allege special damages as a result of the alleged conspiracy. In fact, this Plaintiff has conceded that he has no special damages attributable to the alleged conspiracy. Tant Dep., pp. 166 – 167. Thus, summary judgment in favor of Defendants is appropriate on Plaintiff's state law claim for civil conspiracy.

Furthermore, the South Carolina Court has adopted the intracorporate conspiracy doctrine and held that "no conspiracy can exist if the conduct challenged is a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *McMillan v. Oconee Memorial Hosp., Inc.*, 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006). The doctrine "draws its origins from *Goble v. American Railway Express Co.*, where the state Supreme Court indicated that 'it is impossible to conceive that a conspiracy between a corporation and its agents may be established by the act of such agents alone.'" *McMillan*, 367 S.C. at 564, 626 S.E.2d at 887 (quoting *Goble*, 124 S.C. 19, 115 S.E. 900, 903 (1923)). The Plaintiff has alleged that the actions of several South Carolina state employees, all acting within the scope of their official duties, communicated with one another for the purpose of correcting the Plaintiff's sentence.

"More recently, the South Carolina Court of Appeals held that although 'a corporation, as a legal person in contemplation of law, cannot conspire with itself,' 'the agents of a corporation are legally capable, as individuals, of conspiracy among themselves or with third parties.'" Id.

(citing Lee, 344 S.E.2d at 383).  The South Carolina District Court "interpreted the above cases as distinguishing between two types of civil conspiracies: (1) principal-agent conspiracies and (2) conspiracies between agents of a corporation." Id. 336 Fed.Appx. at 315.  "Based on its reading of South Carolina case law, the court concluded that the intracorporate conspiracy doctrine in South Carolina only apples to principal-agent conspiracies." Id.  Thus, "scope of employment [is] relevant to the intracorporate [immunity] doctrine." Id. Similarly, the Fourth Circuit Court of Appeals "has recognized a similar 'personal stake exception,' holding that […] 'the intracorporate immunity doctrine does not apply where a corporate officer has an independent personal stake in achieving the corporation's illegal objections.'" Id. 336 Fed.Appx. at 316 (citing ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002) (internal quotations omitted)).

"With respect to the second element [of civil conspiracy], the plaintiff must prove by a preponderance of the evidence that [the alleged co-conspirators]  specifically intended to injure the plaintiff. The primary purpose of the alleged agreement or conspiracy must be to injure the plaintiff. Mere speculation about a party's motives with respect to certain conduct does not constitute proof of conspiracy." Id. Further, "[a] bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice." *Walters v. Cnty. of Charleston*, C/A No. 2:01–0059–18, 2002 WL 34703346, *7 (D.S.C. Feb. 7, 2002).

### C.    *Plaintiff's Negligence Action Against Defendant Frick in His Individual Capacity Fails as a Matter of Law and Must be Dismissed with Prejudice*

The Plaintiff has alleged negligence by Defendant Frick in his individual capacity but has failed to allege any grounds to sustain the action.  Of the eight particular grievances cited by the Plaintiff as supporting the negligence allegation, each merely recasts the Plaintiff's other causes

of action as negligence. To the degree that the Plaintiff attempts to claim that Frick was negligent in conspiring against him, he simply fails to name a cause of action as an allegation of civil conspiracy can only be predicated upon an intentional tort. One cannot, of course, conspire to be negligent, because "conspiracy" by definition is intentional.

Under well-settled law, negligence is generally "'the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or doing what such a person, under the existing circumstances, would not have done.'" *Roberts v. City of Forest Acres*, 902 F.Supp. 662, 673 (D.S.C. 1995) (quoting *Jones v. American Fidelity & Cas. Co.,* 210 S.C. 470, 43 S.E.2d 355, 359 (1947)). The *Roberts* court concluded that "[w]hether an individual has acted negligently on a particular occasion is determined from an objective perspective of reasonableness under the circumstances" and granted summary judgment for the defendant on the negligence cause of action. *Roberts*, 902 F.Supp. at 673.

This Plaintiff must "prove three elements to recover on a claim for negligence: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach.*" Carolina Chloride, Inc. v. Richland Cnty.*, 394 S.C. 154, 163, 714 S.E.2d 869, 873 (2011). "If any of these elements is absent a negligence claim is not stated." *Summers v. Harrison Constr.*, 298 S.C. 451, 455, 381 S.E.2d 493, 495 (S.C. Ct.App.1989). "The court must determine, as a matter of law, whether the law recognizes a particular duty[, and] [i]f there is no duty, then the defendant in a negligence action is entitled to a directed verdict." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999).

"Ordinarily, under South Carolina's public duty doctrine, public officials are 'not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at

31

large rather than [to] anyone individually.'" *Tanner v. Florence Cnty. Treasurer*, 336 S.C. 552, 561, 521 S.E.2d 153, 158 (1999) (quoting *Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991)). "Generally, there is no common law duty to act. An affirmative legal duty, however, may be created by statute, contract relationship, status, property interest, or some other special circumstance." *Jensen*, 304 S.C. at 199, 403 S.E.2d at 617.

Here the Plaintiff has failed to establish that Frick owed any duty to Tant as a matter of law therefore, this cause of action must fail. Whatever duty of care Frick owed in the pursuit of advocating for the State with regard to the Plaintiff's sentence was owed to the public at large and therefore cannot establish a duty satisfying the elements of the negligence cause of action.

> ### D.     The Plaintiff's Claim for Punitive Damages Against All Defendants Fails and Must be Dismissed With Prejudice

The Plaintiff has claimed punitive damages pursuant to state law causes of action for outrage, civil conspiracy and negligence. However, these Defendants are amenable to suit only subject to the terms of the Tort Claims Act which "states that '[n]o award for damages under this chapter shall include punitive or exemplary damages.' S.C. Code Ann. § 15–78–120(b)." *McCoy v. City of Columbia*, 929 F.Supp.2d 541, 568 (D.S.C. 2013). Therefore, the Plaintiffs' claims for punitive damages must be dismissed as to these Defendants.

As noted by the *McCoy* court, where there is no evidence showing that an individually named defendant acted other than in his official capacity, punitive damages cannot be recovered against him. *McCoy*, 929 F.Supp.2d at 568. The uncontroverted facts afford but one reasonable inference in this action. Frick was at all times acting within his official capacity and at no point engaged in conduct amounting to an invasion of the Plaintiff's rights.

To the degree that the Plaintiff is pursuing punitive damages against Defendant Frick individually, punitive damages may be awarded in South Carolina when there is clear and

convincing evidence that the conduct of the defendant is willful, wanton, or in reckless disregard of the plaintiff's rights. *Hawkins v. Pathology Associates of Greenville, P.A.*, 330 S.C. 92, 109, 498 S.E.2d 395, 405 (S.C. Ct. App. 1998) (*citing* § 15-33-135). "A tort is characterized as reckless, willful or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence would have been conscious of it as an invasion of the plaintiff's rights." *Hawkins*, 330 S.C. at 110, 498 S.E.2d at 405.

It is beyond reasonable contemplation that Defendant Frick, as the State's prosecutor, could at one phase of the criminal adjudication process, make blunt and pointed accusations against the Plaintiff, proceed to call upon numerous witnesses to testify in support of these accusations, and to call upon the trial judge to sentence the Plaintiff to years of incarceration but then be subjected to punitive damages when, years later, he simply checks that convicted party's status on a website and makes two phone calls to other state employees. The facts, even when presumed in the Plaintiff's favor, cannot support the Plaintiff's punitive damages claim against Defendant Frick in his individual capacity.

*[This Space Intentionally Left Blank]*

CONCLUSION

Accordingly, based on the arguments set forth above, as a matter of law, Defendants Frick, Office of the Attorney General, and Solicitor for the Sixth Judicial Circuit should be granted Summary Judgment on all of the Plaintiff's causes of action and the Plaintiff's claims against these Defendants should be dismissed with prejudice.

Respectfully submitted,

DAVIDSON & LINDEMANN, P.A.

*s/William H. Davidson, II*
WILLIAM H. DAVIDSON, II, #425
JUSTIN T. BAGWELL, #11203
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
jbagwell@dml-law.com
T: 803-806-8222
F: 803-806-8855

ATTORNEYS FOR DEFENDANTS FRICK, SC OFFICE OF ATTORNEY GENERAL AND FAIRFIELD COUNTY SOLICITOR'S OFFICE

COLUMBIA, SOUTH CAROLINA

OCTOBER 15, 2013