*David Ray Tant v. <u>William Frick</u>, Michael Stobbe, David Tatarsky, and John Doe, individually, or alternatively in their capacities as agents of the South Carolina Department of Corrections, <u>the South Carolina Office of the Attorney General</u>, the South Carolina Department of Pardon, Probation and Parole, and <u>the Fairfield County Solicitor's Office</u>, and therefore, the South Carolina Department of Corrections, <u>the South Carolina Office of the Attorney General</u>, the South Carolina Department of Pardon, Probation and Parole, and <u>the Fairfield County Solicitor's Office</u>*
Civil Action Number: 3:12-cv-03020-JFA-PJG
Claim Number: 84865
Our File Number: 103.8983

# EXHIBIT A

*Notice of Motion and Motion for Summary Judgment on Behalf of Defendants William Frick, South Carolina Office of the Attorney General, and Fairfield County Solicitor's Office*

(Excerpts from Transcript of Plea and Sentencing Hearing)

October 15, 2013

```
                                         ...00 a.m.   09-02-2008      2/64
                                                                       1
```

```
STATE OF SOUTH CAROLINA
                              COURT OF GENERAL SESSIONS
COUNTY   OF   CHARLESTON      2004-GS-10-5829 and 5830
                              2004-GS-10-3473, 3474,
                              3475, 3476, 3477, 3478,
                              3479, 3480, 3481, 3482,
                              3483, 3484, 3485, 3486,
                              3487, 3488, 3489, 3490,
                              3491, 3492, 3493, 3494,
                              3495, 3496, 3497, 3498,
                              3499, 3500, 3501, 3502,
STATE OF SOUTH CAROLINA)      3503, 3504, 3505, 3506,
                       )      3507, 3508, 3509, 3510,
                       )      3511, 3512, 3513
    vs.                )
                       )
                       )
DAVID RAY TANT,        )
                       )
       Defendant.      )
```

November 15-22, 2004

B E F O R E:

   HONORABLE WYATT T. SAUNDERS

A P P E A R A N C E S:

   JENNIFER D. EVANS, Esquire
   WILLIAM P. FRICK, JR., Esquire
   Attorneys for the State

   DALE T. COBB, JR., Esquire
   Attorney for the Defendant

                                    Henry P. Young
                                    Court Reporter

2

```
 1              P-R-O-C-E-E-D-I-N-G-S
 2                   (Excerpts)
 3        (Reconvened at 1:00 o'clock p.m., November
 4   22, 2004).
 5        THE COURT:  We'll coming into session,
 6   please, in the matter of State of South Carolina
 7   versus David Ray Tant, indictment 2004-GS-10-5829
 8   and others.
 9        Mr. Frick.
10        MR. FRICK:  Would you like me to call the
11   indictments, Your Honor?
12        THE COURT:  Well, place on the record what is
13   occurring.
14        MR. FRICK:  Your Honor, while we were taking
15   a break it was indicated that, through Mr. Cobb,
16   that Mr. Tant wished to plead guilty to the charges
17   pending against him, with the only negotiation, so
18   to speak, Your Honor, that the indictment for
19   assault and battery with intent to kill on
20   04-GS-10-5829, that he would be allowed to plead to
21   the lesser included of assault and battery of a
22   high and aggravated nature.  All other charges he
23   would plead to and Your Honor would make the
24   determination as to sentence.
25        THE COURT:  All right, thank you, Mr. Frick.
```

```
 1        Mr. Cobb, is that a correct statement?
 2        MR. COBB:  That is correct, Your Honor, and
 3   Mr. Tant has signed the sentencing sheets on all of
 4   those indictments.
 5        THE COURT:  All right.  Now, the Court is
 6   aware that Mr. Tant is not comfortable standing, at
 7   least that was what the Court last knew, it was not
 8   comfortable for you to stand, so does anybody
 9   object to Mr. Tant just remaining seated and
10   comfortable?
11        MR. FRICK:  Absolutely no objection, Your
12   Honor.
13        THE COURT:  All right.
14        Mr. Frick, will you read through through the
15   indictments so that the record will become clear
16   and that both Mr. Cobb and Mr. Tant can understand
17   what he's pleading guilty to?
18        MR. FRICK:  Yes, sir, and what I will do to
19   ensure that the Court is absolutely clear and the
20   record is clear, I'm going to read the indictment
21   number along with the corresponding intake number
22   for each dog to ensure that we have the dog
23   identified.  I'm going to pass forward what was
24   introduced into the court yesterday with the
25   picture of the dog, pictures of the dogs with the
```

10:47:35 a.m.   09-02-2008    5/64

4

1  corresponding intake number that is reflected on
2  the amended indictment.
3      Mr. Cobb has a copy of this sheet and I'm
4  going to pass it forward so the Court will also
5  have a copy so we can follow along. It is in the
6  order of the indictment, so we will go from the
7  lowest number of the indictments to the highest
8  numbered indictment concerning the dogs.
9      THE COURT:  All right, proceed.
10     MR. FRICK:  Thank you, Your Honor.  First I
11 will start with the two other indictments that are
12 not included with the animal fighting indictment.
13 Those would be on 2004-GS-10-5829, charging Mr.
14 Tant with assault and battery with intent to kill
15 on Mr. Steven Baker.
16     I'm just making sure my victim is present
17 with us in court.
18     Also on 04-5830, possession of a dangerous
19 animal.
20     And now, Your Honor, I'll proceed with the
21 animal fighting indictments if that is okay?
22     THE COURT:  Yes, sir.
23     MR. FRICK:  Thank you, Your Honor.
24     Your Honor the first indictment is indictment
25 04-GS-10-3473.  The dog is intake number 25817,

10:47:45 a.m.   09-02-2008    6/64.

5

1  State's Exhibit 69 which I will pass forward to
2  you.
3       And Your Honor, at this time -- yes, sir?
4       THE COURT:  If it is acceptable to the State
5  and to the defense, if the defendant is satisfied
6  that each of the intake numbers is reflected on
7  these photographs --
8       MR. COBB:  Yes, Your Honor.
9       THE COURT:  -- it won't be necessary for the
10 photographs to be handed up.  The Court saw the
11 photographs on yesterday when they were introduced
12 through the witness and it's not necessary to be
13 handing up each photograph.
14      Madam Clerk, hand this back.  Miss Evans,
15 will you take it back, please?
16      Now, is that acceptable, Mr. Cobb?  The Court
17 has already looked at them.
18      MR. COBB:  Yes, sir.
19      THE COURT:  But you do need to --
20      MR. FRICK:  Yes, sir.
21      THE COURT:  When you say this, you are
22 assuring Mr. Cobb that those are the photographs
23 that correspond to the indictment and he has seen
24 them and you have displayed them to him, correct?
25      MR. FRICK:  Yes, sir.

1    THE COURT:  If you are convicted as a result
2 of these proceedings of any one or all of these
3 charges you have a right to appeal but that has to
4 be done in writing within ten days.
5    Do you understand your right to appeal?
6    THE DEFENDANT:  Yes, sir.
7    THE COURT:  Thank you, Mr. Tant.
8    The next step in the proceedings is a
9 statement or presentation by the prosecution of
10 what the evidence would reveal were we to continue
11 with the trial of the case throughout it and to its
12 final adjudication.  Please pay attention because
13 the Court will ask you if you believe, after having
14 heard what statement is made, that this evidence
15 would be admitted, that it would be convincing and
16 that you would be convicted.  That you have to make
17 your own mind up about.
18    Have you explained that to him, Mr. Cobb?
19    MR. COBB:  I have, Your Honor.
20    THE COURT:  Thank you, sir.  So, the next
21 step, sir, is to turn to the State and ask them to
22 say what they would prove to this jury if this
23 trial was to continue and then you will be asked if
24 you either did these things or feel that this could
25 be proven.

734 4113

10:49:36 a.m.     09-02-2008     17/64

16

```
 1            Do you understand that?
 2            THE DEFENDANT:  I'm pretty sure I do, yes,
 3   sir.
 4            THE COURT:  All right.  Well, let's state it
 5   again.  Mr. Frick, are you making the statement?
 6            MR. FRICK:  Sir?
 7            THE COURT:  Will you make the statement?
 8            MR. FRICK:  Yes, sir, I will.
 9            THE COURT:  Mr. Frick is going to say here in
10   front of you and on the record what he is prepared
11   or he thinks he's prepared to prove against you to
12   this jury and then after he says what he says the
13   Court will ask if you did what he says you did or
14   you feel that he could prove what he says he can
15   prove.
16            Clear?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  All right, thank you, Mr. Tant.
19            Solicitor, Mr. Frick, the record is over to
20   you.
21            MR. FRICK:  Thank you very much, Your Honor.
22            As Your Honor is well aware, this case has
23   been before us for the last weak in trial.  I will
24   lay out the basic facts of the case for the record
25   for this plea.
```

ROA- 137

1        This event occurred on or about April 7th of
2   2004 when the Charleston County Sheriff's
3   Department was called out to a shooting incident at
4   5817 County Line Road in the Ravenel area of
5   Charleston County in Charleston, South Carolina.
6   When they arrived on the scene they determined that
7   Mr. Steven Baker who was the victim of a shooting
8   was at the scene and had been shot with some
9   shotgun, he was hit with pellets, Your Honor, and
10  it wasn't clear whether that, at the time whether
11  that had occurred on the property or off the
12  property.
13       Further investigation concluded that he was
14  shot, basically, Your Honor, from pellets hitting
15  from his ankle up to his stomach, Your Honor, all
16  in between, including, Your Honor, his private
17  areas.  He sustained severe injuries as a result of
18  that, was hospitalized and subsequently, because of
19  the lead, suffered severe damage and it is my
20  understanding, Your Honor, almost died from that
21  shooting.
22       When law enforcement initially arrived, as I
23  said, they could not determine how the shooting
24  occurred.  The investigation went on and it was
25  determined from the bomb squad and ATF who came out

734 4113                                              10:49:56 a.m.   09-02-2008        19/64

18

1   to the scene that there was a device placed on the
2   land that was activated by a trip wire, Your Honor.
3       Mr. Baker was there for the purposes of
4   surveying. Now, there is a lot of intimation and
5   rumor as to what Mr. Baker was doing there. The
6   State had evidence to prove Mr. Baker was there for
7   the sole purposes of his job that day, Your Honor.
8   He was called, he showed up for work, he was put on
9   a work crew he didn't normally work with, his boss
10  said, "You're going with these people to this
11  property today." They had no idea he was going to
12  be there. He was there for the prupose of working,
13  was working and placed his, the stake used in
14  surveying into the ground when this thread that
15  acted as a trip wire was tripped, it fired the
16  device, it shot Mr. Baker in the legs, up to his
17  stomach.
18      Law enforcement then determined that based on
19  where the trip wire led to, the device was some
20  sixty something feet away, so if Mr. Baker had been
21  any closer it's devastating to think what could
22  have occurred in that, Your Honor, but we're
23  dealing solely with the injury that did occur, he
24  was shot from this distance away.
25      Law enforcement arrived, identified that Mr.

```
 1   Tant was the property owner and he was present.
 2   Through the investigation they also determined that
 3   there were several pit bulls --
 4        THE COURT: Wait just a minute. Turn to Mr.
 5   Tant. This is sort of a separate and different
 6   charge, so, Mr. Tant, did you arrange the device so
 7   that it would go off if someone tripped a wire or
 8   pulled the thread? Did you do that?
 9        THE DEFENDANT: Yes, sir.
10        THE COURT: Thank you, sir. Continue.
11        MR. FRICK: Thank you, Your Honor.
12        Also in relation to where Mr. Baker was
13   standing were runs with kennels with pit bulls in
14   them and then there were also scattered about the
15   property areas in which pit bulls were chained.
16   Mr. Baker was standing close to where the kennels
17   was in close proximity to where he was standing,
18   working, and that is where the device was.
19        When law enforcement arrived, pursuant to
20   someone being taken into custody, Animal Control
21   began processing and seizing all animals on the
22   property, which is standard procedure under our
23   law, Your Honor. The deputy in charge of that,
24   Deputy Valerie White, had recently been through
25   some training regarding animal fighting. At that
```

```
1   training she had been told that Mr. Tant was
2   involved with animal fighting, to be aware of Mr.
3   Tant.  This was the information she received at the
4   training.
5        Additionally, the dogs that she saw had
6   injuries, scars and other injuries that were
7   consistent with fighting and information she
8   received in her training.
9        As the search continued, once law enforcement
10  procured a search warrant they went through other
11  outbuildings on the property searching for anything
12  relating to the device that was found, because they
13  were still clearing a crime scene and anything
14  involving the animal fighting that had now come up,
15  that the charges had now come about.
16       In the property they found the items, Your
17  Honor, seized before him that the State has
18  introduced into evidence, the treadmills, the
19  cattle prods, the chains, much paperwork, the
20  breaking sticks, Your Honor.  Once they determined
21  that Mr. Tant was a suspect he was detained, his
22  identity was ascertained fully, they realized that
23  he did not live at that property but lived at
24  another property, that property being X393 Dorsey
25  XAvenue in North Charleston.  They obtained a search
```

21

1   warrant for that for any instrumentalities of
2   animal fighting and for the incident involving the
3   shooting of Mr. Baker.
4        At that house they found more
5   instrumentalities and much more paperwork detailing
6   Mr. Tant's involvement in the animal fighting world
7   for years and years and years, Your Honor, dating
8   back into the eighties.  This paperwork is the
9   paperwork that the State introduced yesterday, or
10  Saturday, into the trial.  Also the pictures that
11  Your Honor has seen of the dogs, particularly
12  Tant's Yellow, which was a grand champion, and a
13  grand champion, Your Honor, our expert and our CI
14  would testify that a grand champion is a dog that
15  has won five dogfights, Your Honor.  It's a
16  specific term for this heinous, for lack of a
17  better term, sport.
18       Yellow was the key dog to Mr. Tant's line,
19  through our investigation, through testimony we
20  would have received, and the dogs that were on the
21  property related to this dog Yellow that began in
22  earnest Mr. Tant's line, blood line that was so
23  important in this terrible animal fighting
24  community, Your Honor.  All of this was seized on
25  his property pursuant to search warrant and legal

734 4113                                    10:50:40 a.m.   09-02-2008   23/64

22

1  search.
2      That would be the basic facts of the case,
3  Your Honor. I will now go into what further
4  testimony the State would introduce as the trial
5  continued.
6      First of all we have a vet, Dr. Robert
7  Carlson, who once the dogs were processed he looked
8  at each dog and determined on his examination that
9  there were dogs, many dogs that exhibited injuries
10 consistent with animal fighting. Now, he would
11 testify that not necessarily all the dogs looked as
12 if they had been recently fought or had been
13 fought, but that many dogs had injuries consistent
14 with animal fighting. Furthermore, there were
15 other dogs that had puncture wounds or wounds that
16 were consistent with a dog bite.
17     I'm not going so far as to say he could say
18 that these dogs had been fought but there was
19 injuries consistent with a dog bite. They were not
20 injuries consistent with, say, hunting, if the dog
21 were hit by a boar, which is a use of pit bulls,
22 it's common to use them in boar fighting and hog
23 catch competitions, Your Honor, which also would be
24 an illegal activity. But these dogs did not have
25 any injuries that would indicate that a boar's tusk

1  to Charleston County for the care and upkeep of
2  these animals, and we will get those exact figures
3  to you, Your Honor, but we would just ask that you
4  order that.
5      THE COURT:  Thank you.  Is there anything
6  further from any quarter, please?
7      MS. EVANS:  Nothing from the State, Your
8  Honor.
9      MR. COBB:  Nothing from the defendant, Your
10 Honor, thank you.
11     THE COURT:  Thank you both.  In
12 2004-GS-10-5829 David Ray Tant has been convicted
13 of assault and battery of a high and aggravated
14 nature, for which he is confined to the State
15 Department of Corrections for a term of ten years.
16 Complete medical examination and a report to be
17 filed by the Department of Corrections, all medical
18 attention and medications to be administered.  In
19 2004-3473 Mr. Tant has been convicted of animal
20 fighting, for which he is confined to the State
21 Department of Corrections for five years
22 consecutive to the aforementioned 2004-5829.
23     2004-3474, he's been convicted of animal
24 fighting, for which he is confined to the State
25 Department of Corrections for a term of five years

```
 1  consecutive to 2004-5829.
 2       2004-3475, Mr. Tant is convicted of animal
 3  fighting, for which he is confined to the State
 4  Department of Corrections for a term of five years
 5  consecutive to 2004-5829.
 6       2004-3476, he has been convicted of animal
 7  fighting, for which he is confined to the State
 8  Department of Corrections for a term of five years
 9  consecutive to 2004-5829.
10       2004-3477, Mr. Tant has been convicted of
11  animal fighting, for which he is confined to the
12  State Department of Corrections for a term of five
13  years consecutive to 2004-GS-10-5829, with the
14  stipulation of the Court that this sentence shall
15  be null and void upon payment of restitution to be
16  determined at a hearing or an agreement as to that
17  amount. Now, the hearing to be held within a
18  reasonable time if there is no agreement.
19       In 2004-3478 Mr. Tant is confined to the
20  State Department of Corrections for a term of five
21  years consecutive to 2004-5829, which sentence will
22  be null and void upon payment of restitution to be
23  determined at a hearing or an agreement as to the
24  amount of restitution.
25       Now, all other sentences remaining, in
```

1   2004-5830, he has been conficted of possession of a
2   dangerous animal, for which he is confined to the
3   Department of Corrections for a term of three
4   years, which is suspended.
5        All other indictments, 2004-3479 through and
6   including 2004-3513, he has been convicted of
7   animal fighting, for which he's confined to the
8   State Department of Corrections for five years, all
9   of which are suspended.
10       Are there any questions or comments?  Take
11  your time.
12       MS. EVANS:  Your Honor, yes, I do have, if
13  you could read exactly the first part of what you
14  said the ABHAN and the remaining one, two, three,
15  four, five animal fighting charges were and that
16  sentence was.
17       THE COURT:  In 2004-5829 Mr. Tant is
18  convicted of assault and battery of a high and
19  aggravated nature, for which he is confined to the
20  State Department of Corrections for ten years.
21  Special conditions are that he is to receive
22  complete medical examination and report on his
23  medical conditions to be filed by the Department of
24  Corrections.  All medical attention and medications
25  are to be administered.

1    In 2004-3473, 2004-3474, 2004-3475,
2 2004-3476, those additional four indictments for
3 which he has been convicted of animal fighting, are
4 consecutive to each other and consecutive to
5 2004-5829.
6    Is that clear?
7    MS. EVANS:  Okay, and then the next part?
8    THE COURT:  2004-3477, 2004-3478, he has been
9 convicted of animal fighting in both, for which he
10 is confined to the State Department of Corrections
11 in both for a term of five years consecutive to
12 2004-5829 as to both.  However, the sentence in
13 these two sentences shall be null and void upon
14 payment of restitution which is to be determined at
15 a hearing or by agreement.
16    Questions or comments?
17    MS. EVANS:  The State understands.  Thank
18 you, Your Honor.
19    THE COURT:  The Court's understanding is that
20 we do not have a figure, and to make those
21 sentences null and void they shall be upon
22 satisfaction of the amount of restitution to be
23 paid to and for Mr. Baker, either to him or for him
24 as the case may be, and to or for the care, to and
25 for some individual for the care of these animals.

1    MS. EVANS: Yes, sir.
2    THE COURT: That figure, you just said, Miss
3    Evans, is not now known and you felt it would be
4    obtained soon.
5    MS. EVANS: Yes, we will get those to the
6    defense within a week.
7    THE COURT: And if you would pass that on,
8    then, to Mr. Cobb, if there is an agreement as to
9    the amount and if it is paid, then these sentences
10   are not effective sentences, they are to become
11   null and void. It is written on the face of the
12   sentence sheet that they are null and void on
13   payment of that restitution.
14   MS. EVANS: Yes, sir, those two, the last two
15   dog fighting ones will become null and void.
16   THE COURT: 3477 and 3478.
17   MS. EVANS: Yes, sir, thank you.
18   THE COURT: And the balance of them, as
19   aforesaid, are all, the sentences in each, five
20   years in each, the dog fighting and animal
21   fighting, is suspended, as is the three years for
22   possession of a dangerous animal, it is suspended
23   as well.
24   Are there questions or comments?
25   MR. COBB: Is Your Honor going to retain