*David Ray Tant v. William Frick, Michael Stobbe, David Tatarsky, and John Doe, individually, or alternatively in their capacities as agents of the South Carolina Department of Corrections, the South Carolina Office of the Attorney General, the South Carolina Department of Pardon, Probation and Parole, and the Fairfield County Solicitor's Office, and therefore, the South Carolina Department of Corrections, the South Carolina Office of the Attorney General, the South Carolina Department of Pardon, Probation and Parole, and the Fairfield County Solicitor's Office*
Civil Action Number: 3:12-cv-03020-JFA-PJG
Claim Number: 84865
Our File Number: 103.8983

# EXHIBIT B

*Notice of Motion and Motion for Summary Judgment on Behalf of Defendants William Frick, South Carolina Office of the Attorney General, and Fairfield County Solicitor's Office*

(Excerpts from the Deposition of David Ray Tant)

October 15, 2013

```
 1                    UNITED STATES DISTRICT COURT
 2                    DISTRICT OF SOUTH CAROLINA
 3                         COLUMBIA DIVISION
 4                 Case No.: 3:12-cv-03020-JFA-PJG
 5    David Ray Tant,                            )
 6                       Plaintiff,              )
 7    vs.                                        )
 8    William Frick, Michael Stobbe, David       )
 9    Tatarsky, and John Doe, individually,      )  DEPOSITION OF
10    or alternatively in their capacities       )  DAVID RAY TANT
11    as agents of the South Carolina            )  JUNE 4, 2013
12    Department of Corrections, the South       )
13    Carolina Office of the Attorney General,   )
14    the South Carolina Department of           )
15    Probation, Parole, and Pardon Services,    )
16    and the Solicitor's Office for the Sixth   )
17    Judicial Circuit, and therefore, the       )
18    South Carolina Department of Corrections,  )
19    the South Carolina Office of the Attorney  )
20    General, the South Carolina Department of  )
21    Probation, Parole, and Pardon Services,    )
22    and the Solicitor's Office for the Sixth   )
23    Judicial Circuit,                          )
24                       Defendants.             )
25    _____)
```

DAVID RAY TANT

Page 2

1 　　　　　　　　　　　* * * * *

2 　　　　Deposition on oral examination of DAVID RAY TANT,

3 reported by Patricia G. Bachand, Court Reporter and Notary

4 Public in and for the State of South Carolina; pursuant to

5 Rule 30 of the Federal Rules of Civil Procedure; said

6 deposition was taken at the law offices of Richardson,

7 Plowden & Robinson, PA, 1900 Barnwell Street, Columbia,

8 South Carolina, on Tuesday, the 4th day of June, scheduled

9 for eleven o'clock a.m. and commencing at the hour of 11:18

10 a.m.

DAVID RAY TANT

Page 46

1  assaults on other prisoners did you witness at the Level 3
2  prison?  Was that something that occurred every week?
3  Every month?  Or about how -- about how many?
4       A.    Well, I would say weekly-to-biweekly.
5       Q.    Did you ever witness a prisoner getting hurt in
6  some way, like -- like suffer a severe injury?
7       A.    Oh, yeah.  Many times.
8       Q.    Did you ever see a prison get killed?
9       A.    Not -- not that I know of.  I don't know.  I saw
10 some severely injured, stabbed.  And I don't know that --
11 that they died or -- but I never saw them anymore, after
12 they went away.
13      Q.    All right.
14      A.    I might be able to give you some background on --
15 on where this is all coming from.
16      Q.    All right.
17      A.    The -- the day that the -- they took me from
18 Manning, at the Level 1 camp, where had a 15-year sentence
19 and was about to go up for parole, they came and put
20 handcuffs on me for no reason.  And I said, "Hey, why are
21 you-all doing this?"
22            They said, "We got to take you to the lockup."
23            I said, "Well, what for?  I hadn't done
24 anything."
25            They said, "Well, the classification man will

DAVID RAY TANT

Page 47

1   come tell you in a day or two why you're in lockup."
2          So they put me in lockup, they took my
3   shoestrings, they did all the things that they do.  They
4   put me on suicide watch.  On suicide watch, they come by
5   and mark-up a clipboard every so often, regularly, like
6   every 30 minutes or every hour or something.
7       Q.   Right.
8       A.   And they look in to see what you're doing and
9   everything.  And so the classification man finally came to
10  me at Manning, and he said, "The reason you're in here," he
11  said, "I got a phone call from Columbia, and they told me
12  your sentence has been changed to 40 years."
13          I said, "What?"
14          They said, "Yeah, your sentence has been changed
15  to 40 years.  And they told me to put you in lockup until a
16  bus can transport you to a Level 3 camp."
17          So there I was in lockup, on suicide watch,
18  waiting on the bus to come take me to a Level 3 camp.
19  Well, when the bus come and transported me to a Level 3
20  camp, Lieber Correctional, when I got there it was late in
21  the evening.  I got off the bus and they process you in the
22  administrative building.  Well, going out of the
23  administrative building, they have five dormitories.  And
24  they're spread out, there's a good bit of grassy area in-
25  between them, similar to maybe a college campus.  And a

DAVID RAY TANT

Page 77

1  questions. But I really need you to answer mine, sir.
2       A.   All right. Well, 16-27-30 is so broadly written,
3  it's never been challenged. It's probably unconstitutional
4  if it ever got challenged. But it is so broadly written,
5  it covers owning animals, breeding animals, fighting
6  animals; it's all wrapped up under one big umbrella. So I
7  was breeding animals. That's what I was doing, was
8  breeding animals when they arrested me.
9       Q.   You plead guilty because you were breeding
10 animals.
11      A.   If you read --
12      Q.   Is that -- is that -- is that your sworn
13 testimony today, sir?
14      A.   That is -- that is -- that is exactly right.
15 Because I was breeding. And it says in there, if you're
16 breeding them for fighting. Well, technically, I can't
17 control what the dogs do after they leave me. But just
18 like a gun shop sells a gun, then they can't be responsible
19 for what the gun does after it leave them. But they
20 accused me of breeding dogs for fighting.
21           Now, in order to have the plea deal -- see, they
22 overcharged me with assault and battery with intent to
23 kill, which carried a much higher sentence. And since I
24 was being what I considered railroaded in the courtroom, I
25 said, "My best thing is to plead guilty to a lesser charge

DAVID RAY TANT

Page 78

1   and get out of here, rather than take a chance on getting a
2   whole lot more time." For -- for the assault and battery
3   with intent to kill, they dropped it to assault and battery
4   of a high and aggravated nature.
5        Q.   Right.  Well, the assault and battery charge had
6   to do with the trap-gun you had set up, right?  That has
7   nothing to do with the dogs.  That had to do with the trap-
8   gun you had set up, right?
9        A.   That had to do with Mr. Baker being injured, is
10  what --
11       Q.   Well, did you set up a trap-gun that shot him?
12       A.   I did not.
13       Q.   Well, what shot him?
14       A.   Well, that's a good question.  We don't know
15  today -- we don't know, today, what shot him or who shot
16  him.  But he was shot, apparently.
17       Q.   Well, what was the device that you set up on your
18  property?
19       A.   I never set up a device on my property.
20       Q.   You never did?
21       A.   Not -- not a -- not a trap-gun to shoot a person,
22  no.  I set up some what I called noisemakers.  All right.
23  That were supposed to shoot straight up in the air when --
24  that's what they were supposed to do, shoot-up straight up
25  in the air.

DAVID RAY TANT

Page 166

1  conspiracy claim that's in any way different from what you
2  alleged in your other causes of action?  Is there something
3  that they did, other than what you've alleged your other
4  causes of action, that is -- you're also suing them for
5  civil conspiracy?  Or do you know?
6       A.   Something that they did
7       Q.   Is there something different than what's stated
8  in your other --
9       A.   Well, I --
10      Q.   -- causes of action?
11      A.   I guess my understanding of what you're asking
12 me, I don't have the legal background and knowledge and
13 qualifications.
14      Q.   Right.
15      A.   You -- you're trying to make a lawyer out of me,
16 and I'm -- I'm not a lawyer.  I have to --
17      Q.   I'm not -- I'm not trying to make a lawyer out of
18 you.  What I'm trying to do is understand your causes of
19 action.
20      A.   Yeah.
21      Q.   And since you're the plaintiff -- you know, when
22 you say, for instance, "The actions of the named cause
23 special damages to Tant," do you -- do you know what those
24 special damages might be?
25      A.   The special damages?

1      Q.   Right.  Look at paragraph 69.  Do you have any
2   idea what they might be?  And if you don't, that's fine.
3      A.   Yeah.  All the -- all the same things that we've
4   already talk about.
5      Q.   Those are damages that relate to your other
6   causes of action?
7      A.   Yeah.  All the -- I didn't -- I didn't -- because
8   of what they did, I didn't get to go to my father's
9   funeral.
10     Q.   Sir, you know what?  Let's let that pass.
11          Now, the fourth cause of action is for negligence
12  and gross negligence.  Do you see what you've done that --
13  what you allege that?
14               MS. BALLARD:  (To the witness) It starts
15  right here.
16     Q.   It starts at the bottom of 13, and goes on to 14.
17  Now, if you don't know the question -- the answer to this
18  question, that's fine, because it does -- it is a little
19  bit legal.  So if you don't know, that's fine.  Whenever
20  you allege negligence or gross negligence, it's usually you
21  have to -- you're -- you're -- it's with respect to some
22  duty that the defendants breached.  Okay.  Do you know the
23  duty that these defendants breached, that you think should
24  make them pay you money for negligence, or gross
25  negligence?